# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CARY A.,[1]<br><br>      Plaintiff,<br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner, Soc. Sec. Admin., in official capacity,<br><br>      Defendant. | Case No. 3:21-cv-00093-TMB |

## **DECISION AND ORDER**

On or about May 29, 2014, Cary A. ("Plaintiff") protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), respectively.[2] In both applications, Plaintiff alleged disability beginning January 1, 2011.[3] On or about December 27, 2017, Plaintiff

---

[1] Plaintiff's name is partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Title II and XVI. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[3] Administrative Record ("A.R.") 176, 183, 648. The application summaries, not the applications themselves, appear in the Court's record. The application summary for DIB lists June 2, 2014 and the application summary for SSI lists September 30, 2014 as the application dates.

filed an updated application for SSI benefits.[4] The SSI application was dismissed at Plaintiff's request on February 3, 2021.[5] Plaintiff has exhausted his administrative remedies and filed a Complaint seeking relief from this Court.[6] Plaintiff's opening brief asks the Court to reverse and remand the agency's decision for an award of immediate benefits, or in the alternative, for further administrative proceedings.[7] The Commissioner filed an answer and a response brief.[8] Plaintiff filed a reply brief on October 28, 2021.[9] Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[10] For the reasons set forth below, Plaintiff's request for relief is granted.

## I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[11]

---

[4] A.R. 1280. The ALJ held a hearing on September 16, 2019 in connection with the SSI application, but the hearing decision was not issued before the Appeals Council consolidated Plaintiff's claims on October 25, 2019. A.R. 786–87.

[5] A.R. 563, 573–74.

[6] Docket 1 (Plaintiff's Compl.).

[7] Docket 23 (Plaintiff's Amended Br.). Plaintiff filed his original brief at Docket 17 on August 16, 2021.

[8] Docket 15 (Answer); Docket 24 (Defendant's Br.).

[9] Docket 25 (Reply).

[10] 42 U.S.C. § 405(g).

[11] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

"Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[13] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[14] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[15] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which [s]he did not rely."[16] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[17] Finally, the ALJ has a "special duty to fully and fairly develop

---

[12] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[13] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[14] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[15] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[16] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

[17] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

the record and to assure that the claimant's interests are considered."[18] In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect his own interests.[19]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20] In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[21] Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual),

---

[18] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[19] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[20] 42 U.S.C. § 423(a).

[21] 42 U.S.C. § 1381a.

[22] 42 U.S.C. § 423(d)(1)(A).

"work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[23]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[24] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[25] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[26] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity."[28] *The ALJ determined that Plaintiff had not engaged in substantial activity from January 1, 2011, the alleged onset date, through March 31, 2015, the date last insured.*[29]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical

---

[23] 42 U.S.C. § 423(d)(2)(A).

[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

[27] *Tackett*, 180 F.3d at 1101.

[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[29] A.R. 566.

or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[30] *The ALJ determined that Plaintiff had the following severe impairment: psoriatic arthritis. The ALJ determined that Plaintiff's degenerative disc disease, coronary artery disease, vision, and obesity were non-severe impairments.*[31]

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[32] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[33]

Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed. Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis

---

[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[31] A.R. 566–67.

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[33] A.R. 567.

despite the limitations from his impairments, including impairments that are not severe.[34]

*The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations: standing and/or walking in any combination up to four hours in an eight-hour workday with normal breaks; sitting six hours in an eight-hour workday with normal breaks; "frequently climbing ladders, ropes, or scaffolds but no climbing of ladders, ropes, or scaffold[s]",[35] frequently balancing, stooping, kneeling, crouching, and crawling; and avoiding all unprotected heights.[36]*

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.[37] Otherwise, the evaluation process moves to the fifth and final step. *The ALJ determined that Plaintiff was unable to perform any past relevant work.[38]*

**Step 5.** Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light of the

---

[34] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[35] The ALJ's RFC is internally contradictory, but Plaintiff does not request remand based on the error. Docket 23.

[36] A.R. 567–72.

[37] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[38] A.R. 572.

Case No. 3:21-cv-00093-TMB
Decision and Order
Page 7 of 19

Case 3:21-cv-00093-TMB   Document 27   Filed 04/14/22   Page 7 of 19

RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[39] *The ALJ determined that jobs existed in significant numbers in the national economy that the claimant could have performed, including cashier (DOT #211.462-010), storage facility rental clerk (DOT #295.367-026), and router (DOT #222.587-038).*[40]

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from January 1, 2011, the alleged disability onset date, through March 31, 2015, the date last insured.[41]

### III. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1961; he was 49 years old on his alleged onset date. Plaintiff has been self-employed since 1988. From approximately January 2000 through November 5, 2015, he worked as a news correspondent, a freelance photographer, an author, and cinematographer.[42] However, Plaintiff's earnings since January 1, 2011 have been insufficient to constitute substantial gainful activity.[43]

On December 12, 2014, the Social Security Administration ("SSA") initially determined that Plaintiff was not disabled.[44] Plaintiff appeared and testified without a

---

[39] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[40] A.R. 572–73.

[41] A.R. 573.

[42] A.R. 57–62; 203–11; 253–57.

[43] A.R. 18.

[44] A.R. 112, 113.

representative at a hearing held on November 5, 2015 with ALJ Cecilia LaCara.[45] The ALJ issued an unfavorable ruling on January 27, 2016.[46] The Appeals Council denied Plaintiff's request for review on April 11, 2017.[47] This Court affirmed the ALJ's decision on May 16, 2018.[48] On June 13, 2019, the Ninth Circuit Court of Appeals reversed and remanded the case "to allow further development of the record by [Plaintiff] regarding his symptoms and limitations, and for reconsideration of the record evidence in light of this disposition."[49]

On remand, Plaintiff appeared with an attorney representative at three separate hearings. On May 6, 2020, all parties appeared telephonically. German E. Giese, M.D., testified as the medical expert, but his testimony was cut short by a technical issue and the hearing was continued.[50] Plaintiff appeared telephonically with representation at the hearing on August 20, 2020. The hearing was continued again during the medical expert's testimony due to technical issues.[51] Plaintiff appeared and testified telephonically with representation at the final hearing on December 2, 2020.[52] The ALJ

---

[45] A.R. 53–69.

[46] A.R. 16–27.

[47] A.R. 3–7.

[48] A.R. 685–725.

[49] A.R. 770–777.

[50] A.R. 1530–48.

[51] A.R. 627–44.

[52] A.R. 608–16.

issued an unfavorable decision on February 3, 2021.[53] On April 16, 2021, Plaintiff appealed the Commissioner's final decision to this Court.[54]

## IV. DISCUSSION

Plaintiff is represented by counsel in this appeal. Plaintiff asserts: (1) that the ALJ failed to adequately evaluate Plaintiff's psoriatic arthritis under Listing 8.05 at Step Three in the ALJ's sequential analysis; (2) that the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom allegations; and (3) that the appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers, rendering the decision of the ALJ who derived her authority from Commissioner Saul constitutionally defective.[55] Defendant disagrees and contends that the ALJ reasonably evaluated Plaintiff's subjective complaints and reasonably determined Plaintiff's psoriatic arthritis did not meet or equal a listing. Defendant also contends that Plaintiff's separation of powers argument does not entitle him to a rehearing of his disability claim.[56] The Court addresses Plaintiff's claims herein.

A. <u>The ALJ's Analysis at Step Three</u>

Plaintiff alleges that the ALJ did not adequately explain her evaluation of the several factors used to determine meeting or equaling Listing 8.05. Specifically, he alleges that the ALJ erred: (1) by relying on the testimony of Haddon Alexander, M.D.; (2)

---

[53] A.R. 563–74.

[54] Docket 1.

[55] Docket 23 at 4–18.

[56] Docket 24 at 3–28.

by failing to provide legally sufficient reasons for discounting the testimony of Robert Smiley, M.D.; and (3) by failing to discuss the testimony of German Giese, M.D.[57]

At Step Three in the disability analysis, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in the Appendix to the federal regulations (the "Listings").[58] The Listings describe impairments that are so severe they are presumptively disabling.[59] Although Plaintiff bears the burden of proof at Step Three, the ALJ must provide adequate support for a decision that Plaintiff's impairment does not meet a listing.[60]

Listing 8.05 requires a finding of disability if the claimant establishes dermatitis, including psoriasis, "with extensive skin lesions that persist for at least [three] months despite continuing treatment as prescribed."[61] Assessment of the severity of the psoriasis is based on the extent of Plaintiff's skin lesions, the frequency of flareups of the skin lesions, how Plaintiff's symptoms (including pain) limit Plaintiff, the extent of Plaintiff's treatment, and how the treatment affects the Plaintiff.[62]

Under Listing 8.00(C):

1. Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive

---

[57] Docket 23 at 4–12.

[58] 20 C.F.R. 404, Subpt. P, App. 1.

[59] *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

[60] *Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001).

[61] 20 C.F.R. 404, Subpt. P, App. 1, § 8.05.

[62] 20 C.F.R. 404, Subpt. P, App. 1, § 8.00(C).

skin lesions that result in a very serious limitation include but are not limited to:

a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.

b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.

c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.[63]

Upon remand, the ALJ stated that she "considered the claimant's psoriatic arthritis under listings 8.05 and 14.09."[64] The ALJ determined that the record did "not establish the medical signs, symptoms, laboratory findings or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings [had] concluded that the claimant's impairment(s) medically equal[led] a listed impairment." The ALJ relied on the testimony of Dr. Alexander to determine that Plaintiff did not meet or equal Listing 8.05. Specifically, she relied on Dr. Alexander's testimony that the record did not show "abnormalities," or a description of what Plaintiff's psoriasis involved, and there was no evidence of synovitis until after Plaintiff's date last insured.[65]

---

[63] 20 C.F.R. 404, Subpt. P, App. 1, § 8.00(C)(1)(a)(b)(c).

[64] Although the ALJ named only psoriatic arthritis as a severe impairment, she considered both Listing 8.05 for dermatitis, including psoriasis, and Listing 14.09 for inflammatory arthritis. A.R. 566–67. In his testimony, Dr. Alexander linked Plaintiff's psoriasis with his "joint arthritis." A.R. 592. Plaintiff does not argue that the ALJ erred in her determination that Plaintiff did not meet or equal a listing under Listing 14.09. *See* Docket 23.

[65] A.R. 567.

1. *Dr. Alexander*

Haddon Alexander, M.D., testified on December 2, 2020, at Plaintiff's third hearing after remand. Dr. Alexander agreed that Plaintiff's psoriasis persisted for more than three months, thereby meeting the first criteria under Listing 8.05.[66] However, he testified that he didn't have enough evidence of severe psoriasis before Plaintiff's date last insured. He noted that the photographs in Plaintiff's file showed psoriasis involving the palms and feet. Because the photographs were taken by Plaintiff and not an acceptable medical source, Dr. Alexander would not opine regarding their content. Dr. Alexander also noted that the record made references to multiple scaly plaques, but because Plaintiff's treating providers did not describe the location of the plaques, he could not evaluate them in terms of Listing 8.05. Upon questioning by Plaintiff's attorney, Dr. Alexander also specified that he was not allowed to evaluate subjective evidence, such as pain.[67]

Dr. Alexander did not adequately assess the severity of Plaintiff's psoriasis. The regulations require an assessment of the severity of a claimant's psoriasis under Listing 8.05 to be based on "the extent of Plaintiff's skin lesions, the frequency of flareups of the skin lesions, how Plaintiff's symptoms (including pain) limit Plaintiff, the extent of Plaintiff's treatment, and how the treatment affects the Plaintiff."[68] Neither Dr. Alexander's nor the ALJ's evaluation included such an analysis. In fact, Dr. Alexander testified that he was

---

[66] A.R. 596–97. *See* 20 C.F.R. 404, Subpt. P, App. 1, § 8.05.

[67] A.R. 590–607.

[68] 20 C.F.R. 404, Subpt. P, App. 1, § 8.00(C).

not allowed to evaluate subjective evidence, such as pain.[69] In sum, the ALJ erred by relying on Dr. Alexander's testimony regarding the severity of Plaintiff's psoriasis in her determination that Plaintiff did not meet Listing 8.05.

Moreover, the record does not support the ALJ's Step Three determination. Throughout Plaintiff's insured period, from January 1, 2011 through March 31, 2015, Plaintiff's treating providers noted "recurrent fairly severe psoriasis" and "multiple scaling areas of psoriasis."[70] Although on physical examination he often had a normal gait,[71] Plaintiff was prescribed Percocet[72] for pain relief and reported experiencing breakthrough pain and flares.[73] He reported symptoms despite treatment and side-effects from treatments.[74] At an evaluation in November 2014, the physician observed that Plaintiff had "generalized plaque psoriasis from head to toe." He observed "plaque psoriasis about [Plaintiff's] face and forehead" and "could not visualize the [tympanic membranes] because of the amount of scaling and cerumen in the ears." The physician also noted that Plaintiff climbed onto the exam table "with difficulty due to generalized joint pain," and

---

[69] A.R. 603.

[70] *E.g.,* A.R. 436, 440–53, 456–69, 473–88.

[71] *E.g.,* A.R. 377, 435, 441, 447.

[72] Percocet is a combination of oxycodone and acetaminophen used to relieve moderate to severe pain. *See https://www.webmd.com/drugs/2/drug-7277/percocet-oral/details/* (last visited April 7, 2022).

[73] *E.g.,* 380, 441, 445, 449–54, 457, 460, 473, 549, 551.

[74] *See* A.R. 1468 (history of psoriasis and failed treatment attempts).

that "[Plaintiff made] all his maneuvers quite slowly, but symmetrically."[75] In an opinion letter written in 2017, treating provider ANP Bushnell[76] included copies of Plaintiff's photographs showing psoriasis over most of his body, including his hands, feet, and buttocks. She verified that they were accurate photographs.[77] Later treatment records show that Plaintiff's psoriasis continued and worsened after the date last insured.[78]

   2. *Dr. Smiley*

At Plaintiff's second hearing on remand, Dr. Smiley initially testified that Plaintiff's psoriasis was "so systemic and so disfiguring," it would meet Listing 8.05. After questioning by the ALJ, Dr. Smiley later testified that Plaintiff's psoriasis and psoriatic arthritis was disabling "sometime" after November 2014, but Plaintiff could have performed light work between January 2011 and November 2014. However, the hearing was cut short by technical problems, Plaintiff's attorney was not able to finish questioning Dr. Smiley, and Dr. Smiley's testimony was incomplete.[79]

---

[75] A.R. 538–41.

[76] Under the regulations in force at the time of Plaintiff's application, ANP Bushnell would "qualify as an 'other source' that can provide evidence about the severity of a claimant's impairments and how it affects the claimant's ability to work." *Garrison v. Colvin,* 759 F.3d 995, 1013–14 (9th Cir. 2014); 20 C.F.R. § 404.1513(d) (effective September 3, 2013 to March 26, 2017).

[77] A.R. 1414–16. Some photographs have date stamps from 2014, before the date last insured, and some have date stamps from 2015, shortly after the date last insured. A.R. 1415–16.

[78] *E.g.,* A.R. 1468–75 (increase in joint pain and cutaneous psorirasis despite medication); 1480–99 (diffuse psoriatic arthritis involving feet, hands, spine; ambulation with cane at some visits); 1513–16 (increased medication dosing with continued cutaneous rash and morning stiffness and joint pain); 1522–27 (continued Perocet prescription for low back and other chronic pain). Dr. Alexander noted in his testimony that Plaintiff had episodes of synovitis in 2016–2019. A.R. 594.

[79] A.R. 635–41.

The ALJ gave little weight to the testimony of Dr. Smiley, providing only that his testimony was "not completely consistent with the medical evidence during the relevant period."[80] The ALJ did not describe the evidence which was inconsistent with Dr. Smiley's testimony or even which portion of Dr. Smiley's testimony was inconsistent with the record. In the Ninth Circuit, "an ALJ errs when [she] rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for [her] conclusion."[81] The ALJ did not provide adequate reasons for rejecting Dr. Smiley's medical opinion. Moreover, to the extent Dr. Smiley opined that Plaintiff's psoriasis met or equaled Listing 8.05 during some or all of the disability period, there is record support for this opinion.

3. *Dr. Giese*

German Giese, M.D., testified at Plaintiff's first hearing on remand before ALJ LaCara on May 6, 2020. He initially testified that Plaintiff met the requirements of Listing 8.05. Dr. Giese testified that Plaintiff's psoriasis was "widespread, involving extensive" areas of the body, that Plaintiff had been on multiple medications, and that the record showed multiple visits to different physicians documenting advanced psoriasis with extensive lesions. He commented that the color photos submitted by Plaintiff "really correlated with what is described in the documentations." Dr. Giese also described the

---

[80] A.R. 571.

[81] *Garrison,* 759 F. 3d at 1012–13.

physical examination from November 2014 showing a slow gait and shuffling with no demonstrable limb. Upon further questioning by the ALJ, Dr. Giese then testified that Plaintiff was not disabled, but the timeframe was not clarified at the hearing. Dr. Giese's testimony was cut short by a technical problem.[82]

The ALJ did not acknowledge or consider Dr. Giese's medical opinion in her decision. As set forth above, the ALJ may not simply ignore a medical opinion that is favorable to Plaintiff. Although Dr. Giese's testimony incomplete due to technical problems at the hearing, to the extent he opined that Plaintiff was disabled under Listing 8.05, his opinion is supported by substantial evidence in the record.

For the reasons above, the ALJ's conclusion that Plaintiff did not meet or equal Listing 8.05 is not supported by substantial evidence, and not free of harmful legal error. Because Plaintiff met Listing 8.05 during the disability period, Plaintiff should have been presumed disabled at Step Three in the sequential analysis. Therefore, the Court does not reach Plaintiff's additional arguments, including his argument that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony and his separation of powers argument.

B. Scope of Remand

Plaintiff argues that remanding for an award of benefits is appropriate in this case.[83] "The decision whether to remand a case for additional evidence, or simply to

---

[82] A.R. 1540–47.

[83] Docket 23 at 18–20.

award benefits is within the discretion of the court."[84] When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[85] A court follows a three-step analysis to determine whether a case raises the "rare circumstances" that allow a court to exercise its discretion to remand for an award of benefits.[86] Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits.[87]

Here, the ALJ erred at Step Three by failing to provide substantial evidence to support her Step Three determination and failed to explain why probative evidence was discounted. There is significant evidence that Plaintiff's psoriasis persisted more than three months despite treatment as prescribed. Neither the ALJ nor testifying expert Dr. Alexander adequately analyzed the severity of Plaintiff's psoriasis in the context of Listing 8.05. Additionally, the record is fully developed and further proceedings would serve no useful purpose. The disability period under consideration is remote and the ALJ has already held at least four hearings and issued two decisions on basically the same record.

---

[84] *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987) (citation omitted).

[85] *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) (quoting *Treichler,* 775 F.3d at 1099).

[86] *Garrison,* 759 F.3d at 1020.

[87] *Revels v. Berryhill,* 874 F.3d 648, 668 (9th Cir. 2017).

If the discredited medical opinion evidence from Drs. Smiley and Giese and the evidence in the record of Plaintiff's severe psoriasis are credited as true, the ALJ would be required to find that Plaintiff was disabled during the relevant period from January 1, 2011 through March 31, 2015. Finally, the rare circumstances of this case weigh in favor of remanding for immediate payment of benefits. Plaintiff first sought benefits approximately eight years ago, claiming disability more than eleven years ago. His case was appealed to and remanded by the Ninth Circuit Court of Appeals. He attended and retained counsel for three separate hearings before the ALJ on remand. In sum, Plaintiff qualifies for benefits under Step Three of the disability analysis for his psoriasis under Listing 8.05 during the disability period from January 1, 2011 through March 31, 2015.

## V. ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and not supported by substantial evidence in the record. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 23 is GRANTED, the Commissioner's final decision is REVERSED, and the case REMANDED for an immediate calculation and award of benefits.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 14th day of April, 2022 at Anchorage, Alaska.

*/s/ Timothy M. Burgess*
UNITED STATES DISTRICT JUDGE